**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DANIEL A. HELEVA,** | : | **CIVIL ACTION NO. 1:04-CV-1488** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **SANDRA KUNKLE, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Presently before the court is a motion for summary judgment by defendant, Dr. Prakashschandra Shah ("Dr. Shah"), a medical doctor who provides services to inmates at Monroe County Correctional Facility ("MCCF") where plaintiff, Daniel A. Heleva ("Heleva"), was incarcerated.  Heleva alleges that Dr. Shah was deliberately indifferent to a serious neck injury sustained as a result of an incident with another inmate.  Dr. Shah counters that he was not deliberately indifferent in his diagnosis and treatment of Heleva's neck injury.  The court agrees, and will grant the motion.

## I.   <u>Statement of Facts</u>[1]

Heleva alleges that, on July 14, 2002, while incarcerated at MCCF, he was attacked by another inmate and rendered unconscious.  He allegedly sustained a neck injury during the attack.  (Doc. 1 at 3-4.)  Shortly after the incident, Heleva

---

[1] In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to plaintiff. <u>See</u> <u>infra</u> Part II.

was examined by a nurse,[2] who observed that his neck was red and bruised and that the right, back area of his head was painful to the touch.  (Doc. 18, Ex. A at 4.) Heleva was monitored for the remainder of the day by MCCF personnel who kept him under a fifteen-minute watch to assure that he stayed awake.  (Doc. 18, Ex. A at 4; Doc. 74 ¶ 8.)  The following day, Dr. Shah, a medical doctor who provides services to inmates at MCCF (Doc. 18, Exs. B, C), examined Heleva.  (Doc. 18, Ex. A at 5, Ex. C ¶ 4.)  After observing the pain and the slightly limited range of motion in Heleva's neck, Dr. Shah determined that Heleva had suffered a sprain.  (Doc. 18, Ex. A at 5, Ex. C ¶ 4.)  Dr. Shah then ordered a cervical x-ray and prescribed Flexeril, a muscle relaxer.  (Doc. 18, Ex. A at 5, Ex. C ¶¶ 5-6.)  The x-ray results were negative for fractures.[3]  (Doc. 18, Ex. A at 5, 24.)

Dr. Shah examined Heleva again on July 29, 2002.  (Doc. 18, Ex. A at 6, Ex. C ¶ 7.)  He reported the findings from the nurse's July 26 evaluation that Heleva had pain and limited range of motion in his neck and shoulder.  (Doc. 18, Ex. A at 6.) Dr. Shah advised Heleva to continue taking Flexeril and prescribed Naprosyn, an anti-inflammatory medication.  (Doc. 18, Ex. A at 6, Ex. C ¶¶ 8-9.)  After noting that

---

[2] Heleva disagrees with the term "examined" and instead uses "observed" to characterize the nurse's contact with him (Doc. 74 ¶ 6).  In denying another of Dr. Shah's averments, Heleva indicates that "Doctor Shah had *seen*, not examined plaintiff."  (Doc. 74 ¶ 22.)  The court recognizes this disagreement over terminology, but notes that the disposition of defendant's motion does not depend on whether Heleva was "examined," "observed," or "seen" by MCCF medical staff.

[3] Heleva denies Dr. Shah's claim that the x-ray was "normal," but he agrees that the x-ray revealed no fractures or slipped disks.  Heleva apparently contends that the x-ray films are of no value in diagnosing possible nerve damage.  (Doc. 74 ¶ 12.)

Heleva's range of motion was improving, Dr. Shah discussed range of motion exercises with Heleva.[4]  (Doc. 18, Ex. A at 6, Ex. C ¶ 8.)

On October 3, 2002, Heleva requested a second opinion regarding his neck pain.  (Doc. 67, Ex. at 19.)  According to Heleva, Dr. Shah was "visibly upset" by this request and insisted that he would handle the situation.  (Doc. 73 ¶ 11.)  Dr. Shah subsequently ordered another x-ray, which was again negative (Doc. 18, Ex. A at 25), and advised Heleva to continue taking Naprosyn.  (Doc. 18, Ex. A at 8.)  Two weeks later, Heleva had a follow-up visit with Dr. Shah, where Dr. Shah discussed the x-ray results and increased the range of motion exercises to Heleva's right shoulder.  (Doc. 18, Ex. A at 9.)  On November 21, 2002, Dr. Shah again met with Heleva to discuss his condition and lack of sleep from the pain.  (Doc. 18, Ex. A at 9-10.)

Thereafter, Dr. Shah and other medical staff routinely saw Heleva regarding his neck injury, sometimes only to discuss changes in medications.  (Doc. 18, Ex. A.)  Flexeril continued to be prescribed, along with other medications, including Elavil.  (Doc. 18, Ex. A, Ex. C ¶¶ 12, 14.)  On May 5, 2004, Dr. Shah noted that Heleva had

---

[4] Heleva flatly denies that Dr. Shah provided him with range of motion exercises.  As proof, Heleva directs the court to an October 23, 2002 examination note by Dr. Shah in which Dr. Shah specifically states:  "[Treatment] [p]lan d/w [discussed with] pt. [patient] who understands & agrees with it."  (Doc. 18, Ex. A at 9.)  Heleva contends that the absence of such an observation in the July 29, 2002 medical records suggests that Dr. Shah did not provide him with the range of motion exercises.  This contention is meritless.  While the July 29th medical records do not mention whether Heleva *understood* the range of motion exercises, the records specifically state that Dr. Shah *discussed* these exercises with Heleva.  (Doc. 18, Ex. A at 6.)

experienced neck pain for approximately two years and had decreased range of motion in all directions.  (Doc. 18, Ex. A at 19.)  Subsequently, Dr. Shah ordered an MRI (Doc. 18, Ex. A at 19), which was completed on September 30, 2004 (Doc. 73 ¶ 18).[5]

As an alternative to drug therapy, Heleva attempted unsuccessfully to secure the free chiropractic services of a Prison Society Member chiropractor, Dr. Melvin J. Rosenthal.  (Doc. 73 ¶ 9; Doc. 67, Ex. at 22.)  Heleva sought the services of Dr. Rosenthal and requested a second opinion by filling out the "Sick Call Request" and "Inmate Request" forms.  In response, prison officials advised Heleva that he needed a referral from the facility doctor and that such a referral would not be forthcoming because his x-rays were negative.[6]  (Doc. 67, Ex. at 27, 38-40.)  Heleva also pursued over-the-counter treatment modalities, but these efforts were ultimately unsuccessful or unavailable.[7]

---

[5] There is no evidence in the record regarding the results of the MRI.

[6] While incarcerated at MCCF, Heleva was never referred for a second opinion.  (Doc. 73 ¶ 15.)

[7] Analgesic balm—Ben Gay—use ended because supply ran out.  (Doc. 67, Ex. at 20.  Ice bag treatment was denied at times.  (Doc. 67, Ex. at 20-21; but see Doc. 67, Ex. at 21.)  Over-the-counter medications were confiscated because they were not in the original packaging.  (Doc. 67, Ex. at 35-37.)  Heleva was denied the opportunity to purchase analgesic balm directly from the commissary for security reasons.  (Doc. 73 ¶ 15.)

Upon Heleva's transfer to another correctional institution in 2005, medical staff examined Heleva's neck, prescribed Motrin, and ordered an x-ray. (Doc. 73 ¶¶ 20-22.) The radiologist's report purportedly indicated that Heleva's head leaned to the right and that the bone structure was misaligned in two directions and unevenly spaced. (Doc. 73 ¶ 23.)

In July 2004, Heleva commenced the instant action against officials at MCCF, including Dr. Shah, pursuant to 42 U.S.C. § 1983. (Doc. 1.) The complaint raises Eighth Amendment claims,[8] as well as various claims under the Pennsylvania Constitution.[9] It seeks an injunction requiring proper diagnosis and treatment and prohibiting defendants and their agents from harassing, threatening, punishing, or retaliating against plaintiff, as well as compensatory and punitive damages.

---

[8] Although the complaint asserts claims under the Due Process and Equal Protection Clauses of the Fourteenth Amendment (Doc. 1 at 2), it alleges "substantially serious risk to plaintiff's health" and "deliberate indifference" against Dr. Shah (Doc. 1 ¶ 33), language implicating the Eighth Amendment protection against cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004). Hence, the court will construe the complaint as having raised Eighth Amendment claims. See Alston v. Parker, 363 F.3d 229, 234 (3d Cir. 2004) (stating that *pro se* complaints should be construed liberally).

[9] Pursuant to 42 U.S.C. § 1983, Heleva also raises claims against Dr. Shah under Article I of the Pennsylvania Constitution. (Doc. 1 at 2.) However, the federal civil rights laws provide redress for violations of only *federal* rights, not *state* constitutional provisions. Elkin v. Fauver, 969 F.2d 48, 52 (3d Cir. 1992); Brown v. Grabowski, 922 F.2d 1097, 1113 (3d Cir. 1990). Hence, the court will grant defendant's motion for summary judgment as to these state constitutional claims.

On October 13, 2004, Dr. Shah filed the instant motion for summary judgment arguing that his diagnosis and treatment of Heleva do not constitute cruel and unusual punishment.[10]  (Doc. 17.)  Heleva filed a brief in opposition, contending that Dr. Shah was deliberately indifferent to a serious medical need. (Doc. 75.)  The motion is now ripe for disposition.

## II.   <u>Standard of Review</u>

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue of material fact," and for which a jury trial would be an empty and unnecessary formality.  It places the burden on the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  <u>Pappas v. City of Lebanon</u>, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-57 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-89 (1986); <u>see also</u> FED. R. CIV. P. 56(c), (e). Only if this threshold is met may the cause of action proceed.  <u>Pappas</u>, 331 F. Supp. 2d at 314.

---

[10] Dr. Shah also contends that Heleva did not exhaust all administrative remedies.  (Doc. 19 at 9-11.)  Although the court has elected to decide Dr. Shah's motion on the merits, the court is aware that other defendants contend that Heleva did not exhaust administrative remedies.  Nothing contained in this memorandum should be construed as a determination on the merits of the remaining defendants' failure to exhaust argument, which will be addressed by separate order.

## III.   **Discussion**

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials.  See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To establish a civil rights claim, the plaintiff must show a "deprivation" of a constitutional or statutory right by a person "acting under color of state law."[11]  Id. (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

In the matter *sub judice*, Heleva raises a claim against Dr. Shah under the Eighth Amendment to the United States Constitution.[12]  The Eighth Amendment guarantees that individuals will not be subjected to "cruel and unusual punishments."  U.S. Const. amend. VIII.  In the context of prison medical care, a violation of the Eighth Amendment is established by showing that a prison official acted with "deliberate indifference" to the prisoner's "serious medical needs."

---

[11] Dr. Shah does not argue that he was not "acting under color of state law."

[12] See supra note 8.

7

Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004).

A serious medical need is a condition requiring treatment as diagnosed by a doctor or a condition "so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).  A prison doctor acts with deliberate indifference when the doctor:  (1) "intentionally inflict[s] pain" on the inmate, (2) "den[ies] reasonable requests for medical treatment . . . [which] exposes the inmate to 'undue suffering or the threat of tangible residual injury,'" or (3) knows of the "need for medical care" and "intentional[ly] refus[es] to provide that care."  Id. Mere negligence is insufficient to establish an Eighth Amendment violation. Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1081 (3d Cir. 1976) ("To establish a constitutional violation, the indifference must be deliberate and the actions intentional."); see also Natale v. Camden County Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (stating that "deliberate indifference" is a standard consistent with recklessness).  Likewise, a difference of opinion between the inmate and doctor regarding medical treatment does not support an Eighth Amendment claim. Spruill, 372 F.3d at 235; Monmouth County, 834 F.2d at 346.  The key question is whether the doctor treated the inmate in *some* way, not whether the inmate agreed with the treatment.  Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988).

8

In the matter *sub judice*, Heleva repeatedly alleges that Dr. Shah acted with "deliberate indifference." This conclusory allegation is without factual support. Assuming, *arguendo*, that Heleva suffered from a serious medical need, nothing in the record indicates that Dr. Shah acted with deliberate indifference by (1) intentionally inflicting pain, (2) denying Heleva's requests for medical treatment and exposing Heleva to undue suffering, or (3) intentionally refusing to treat Heleva. Indeed, the overwhelming evidence of record demonstrates that Heleva was seen numerous times by MCCF medical staff who addressed his complaints. Heleva received medical care shortly after the July 14, 2002 incident—a nurse attended to him at the scene of the incident and staff monitored him for the remainder of the day. Dr. Shah saw him the next day, diagnosed a neck sprain, ordered an x-ray, and prescribed medication. Two weeks later, Dr. Shah again examined Heleva, prescribed additional medication, and discussed range of motion exercises. Further, the medical staff continued to treat Heleva's injury with medications and range of motion exercises and conducted another x-ray and, eventually, an MRI.

Culled to its essence, Heleva's complaint is a disagreement with Dr. Shah's diagnosis and treatment.  Under these circumstances, it is clear that Heleva cannot establish an Eighth Amendment deliberate indifference claim against Dr. Shah.[13]

## IV.   **Conclusion**

A review of the allegations of the complaint and evidence of record reveals that, even when considered in the light most favorable to him, Heleva's claims against Dr. Shah cannot proceed to trial.  The motion for summary judgment will be granted.

An appropriate order will issue.

  S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:        September 27, 2005

---

[13] Although Heleva ostensibly preferred chiropractic care over analgesic medication, this dispute over *course* of treatment effectively disproves deliberate indifference because it acknowledges diagnosis and treatment decisions.  See Spruill, 372 F.3d at 235; Monmouth County, 834 F.2d at 346; see also Estelle, 429 U.S. at 107 ("[T]he question whether . . . additional diagnostic techniques or forms of treatment [are] indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.  At most it is medical malpractice."); Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) ("Courts will 'disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . (which) remains a question of sound professional judgment.'").

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DANIEL A. HELEVA,** | **:** | **CIVIL ACTION NO. 1:04-CV-1488** |
| | **:** | |
| **Plaintiff** | **:** | **(Judge Conner)** |
| | **:** | |
| **v.** | **:** | |
| | **:** | |
| **SANDRA KUNKLE, et al.,** | **:** | |
| | **:** | |
| **Defendants** | **:** | |

## ORDER

AND NOW, this 27th day of September, 2005, upon consideration of

defendant's motion for summary judgment (Doc. 17), and for the reasons set forth

in the accompanying memorandum, it is hereby ORDERED that:

1.      The motion for summary judgment (Doc. 17) is GRANTED.

2.      The Clerk of Court is directed to defer the entry of judgment until the
conclusion of this case.

3.      Any appeal from this order is DEEMED frivolous and not in good
faith.  See 28 U.S.C. § 1915(a)(3).


  S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge