IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DANIEL A. HELEVA,** | : | **CIVIL ACTION NO. 1:04-CV-1488** |
| **Plaintiff** | : | **(Judge Conner)** |
| v. | : | |
| **SANDRA KUNKLE, et al.,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Presently before the court is a second motion for summary judgment, filed by defendants Sandra Kunkle ("Officer Kunkle"), David Keenhold ("Keenhold"), Paul Jennings ("Jennings"), Michael Taeberry ("Taeberry") and Gary McFarland ("McFarland"), on plaintiff Daniel Heleva's ("Heleva") Eighth Amendment failure-to-protect claim. (Docs. 95, 98.) Heleva alleges that defendants failed to protect him from an attack by another inmate resulting in a serious neck injury. Defendants counter that judgment should be entered in their favor because Heleva failed to exhaust his administrative remedies. The court agrees, and will grant the motion.

I.  **Statement of Facts**[1]

Heleva alleges that, on July 14, 2002, while incarcerated at Monroe County Correctional Facility ("MCCF"), he was attacked by another inmate and rendered unconscious. (Doc. 1 ¶¶ 12-14.) Officer Kunkle was in charge of the Unit when Heleva was attacked. (Doc. 97 ¶ 4.) Prior to the incident, Officer Kunkle briefly left the Unit. (Doc. 97 ¶ 5.) Officer Kunkle was never more than twenty feet away from the inmates during the time period in question. (Doc. 96 ¶ 12.) Upon witnessing the attack, Officer Kunkle immediately restrained the attacker, called for assistance, and summoned medical assistance from a nurse. (Doc. 97 ¶¶ 14, 16-17; Doc. 100 ¶¶ 14, 16-17.) Upon examination,[2] Heleva's neck was red and bruised and the right, back area of his head was painful to the touch. (Doc. 18, Ex. A at 4.) Heleva was monitored for the remainder of the day by MCCF personnel who kept him under a fifteen-minute watch to assure that he stayed awake. (Doc. 18, Ex. A at 4; Doc. 74 ¶ 8.) The following day, Dr. Prakashschandra Shah ("Dr. Shah"), a medical doctor who provides services to inmates at MCCF (Doc. 18, Exs. B, C), examined Heleva. (Doc. 18, Ex. A at 5, Ex. C ¶ 4.) Dr. Shah determined that Heleva had suffered a

---

[1] In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to plaintiff. See infra Part II.

[2] Heleva disagrees with the term "examined" and instead uses "observed" to characterize the nurse's contact with him. (Doc. 74 ¶ 6.) In denying another averment, Heleva indicates the doctor "had *seen*, not examined plaintiff." (Doc. 74 ¶ 22.) The court recognizes this disagreement over terminology, but notes that the disposition of defendants' motion does not depend on whether Heleva was, at this juncture, "examined," "observed," or "seen" by MCCF medical staff.

2

sprain. (Doc. 18, Ex. A at 5, Ex. C ¶ 4.) Dr. Shah then ordered a cervical x-ray and prescribed a muscle relaxer. (Doc. 18, Ex. A at 5, Ex. C ¶¶ 5-6.) The x-ray results were negative for fractures.[3] (Doc. 18, Ex. A at 5, 24.) Dr. Shah subsequently prescribed a muscle relaxer, an anti-inflammatory and pain medication to treat Heleva's injury. (Doc. 18, Ex. A at 6, Ex. C ¶¶ 8-9.) Dr. Shah continued to examine Heleva through September 2004. (Doc. 18, Ex. A at 6, Ex. C ¶ 7; Doc. 73 ¶ 18.)

In July 2004, Heleva commenced the instant action against officials at MCCF, and Dr. Shah, pursuant to 42 U.S.C. § 1983. (Doc. 1.) The complaint raises Eighth Amendment claims,[4] as well as various claims under the Pennsylvania Constitution.[5] It seeks an injunction requiring proper diagnosis and treatment and

---

[3] Heleva agrees that the x-ray revealed no fractures or slipped disks, but he denies that the x-ray was "normal." (Doc. 74 ¶ 12.)

[4] Although the complaint asserts claims under the Due Process and Equal Protection Clauses of the Fourteenth Amendment (Doc. 1 at 2), it alleges "substantially serious risk to plaintiff's health" and "deliberate indifference" against defendants (Doc. 1 ¶¶ 31-32), language implicating the Eighth Amendment protection against cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004.) Hence, the court will construe the complaint as having raised Eighth Amendment claims. See Alston v. Parker, 363 F.3d 229, 234 (3d Cir. 2004) (stating that *pro se* complaints should be construed liberally.)

[5] Pursuant to 42 U.S.C. § 1983, Heleva also raises claims under Article I of the Pennsylvania Constitution. (Doc. 1 at 2.) However, the federal civil rights laws provide redress for violations of only *federal* rights, not *state* constitutional provisions. Elkin v. Fauver, 969 F.2d 48, 52 (3d Cir. 1992); Brown v. Grabowski, 922 F.2d 1097, 1113 (3d Cir. 1990.) Hence, the court granted defendants' motion for summary judgment as to the state constitutional claims. (Doc. 94.)

prohibiting defendants and their agents from harassing, threatening, punishing, or retaliating against plaintiff, as well as compensatory and punitive damages.

On October 13, 2004, Dr. Shah filed a motion for summary judgment arguing that his diagnosis and treatment of Heleva did not constitute cruel and unusual punishment.[6] (Doc. 17.) Heleva filed a brief in opposition, contending that Dr. Shah was deliberately indifferent to a serious medical need. (Doc. 75.) Dr. Shah's motion for summary judgment was granted by order of court dated September 27, 2005. (Doc. 82.)

On August 22, 2005, the remaining defendants filed a motion for summary judgment asserting, *inter alia*, that plaintiff did not file grievances or exhaust available administrative remedies for Eighth Amendment claims of deliberate indifference to a serious medical need and serious risk of harm brought pursuant to 42 U.S.C. § 1983. (Doc. 69.) The court granted defendants' motion for summary judgment with respect to plaintiff's Eighth Amendment claim of deliberate indifference to a serious medical need and with respect to plaintiff's state constitutional claims. (Doc. 94.) The court otherwise denied the motion for summary judgment. The court permitted defendants to file a second motion for summary judgment on the Eighth Amendment failure-to-protect claim, including

---

[6] Dr. Shah also contended that Heleva did not exhaust all administrative remedies (Doc. 19 at 9-11), but the court elected to decide Dr. Shah's motion on the merits. Hence, nothing contained in the memorandum granting Dr. Shah's motion for summary judgment addressed the merits of the failure to exhaust argument as raised by the remaining defendants. (See Doc. 82.)

any failure-to-exhaust argument. (Doc. 94.) On April 21, 2006, defendants filed the instant motion for summary judgment and supporting documents. (Docs. 95, 96, 97, 98.) Heleva subsequently filed his opposition. (Docs. 99, 100, 101.) The motion has been fully briefed and is now ripe for disposition.

## II.   Standard of Review

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue of material fact," and for which a jury trial would be an empty and unnecessary formality. It places the burden on the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986.) This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e.) Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

**III.    Discussion**

The Prison Litigation Reform Act ("PLRA") provides:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  In order to exhaust his administrative remedies, Heleva was required to file a grievance raising his present claims against defendants.  See Curry v. Scott, 249 F.3d 493, 505 (6th Cir. 2001) (stating that exhaustion requires the inmate to "file a grievance against the person he ultimately seeks to sue").  Defendants properly raised Heleva's failure to exhaust in their answer to the complaint (Doc. 12) and in the instant motion for summary judgment.  See Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002) (holding that defendants must plead and prove the exhaustion issue as an affirmative defense).

The Third Circuit in Spruill v. Gillis, 372 F. 3d 218, 230 (3d Cir. 2004), held, in a civil rights action that the PLRA's exhaustion requirement includes a procedural default component.  The Spruill Court indicated that federal courts should evaluate a prisoner's procedural default within the applicable prison grievance system, i.e., "in the course of an existing and fully developed grievance," rather than "ascertaining whether a prisoner's undeveloped grievance would be futile."  Id. at 231 n.10.  Further, the prison's grievance system's procedural requirement may not be imposed in a way that offends the Constitution or federal policy as contained in

§1997e(a), and "compliance with the administrative remedy scheme will be satisfactory if it is substantial." Id. at 232 (citation omitted).

The first inquiry, according to Spruill, is whether the plaintiff literally exhausted his administrative remedies, that is, whether there are "further avenues of relief available to him within the prison's inmate grievance process." Id. In the matter *sub judice*, the MCCF grievance procedure provides for five levels of appeal of a prisoner's complaint. This procedure is outlined in the Inmate Handbook, which provides, in pertinent part:

> If you feel that someone or some action that has been taken against you is unjust or unfair, you may file a grievance. A grievance includes at least one level of appeal. It is encouraged that problem solving begin at the level of most direct inmate contact. You should utilize the grievance procedure, only after addressing the problem with the Housing Unit Officer and reaching no satisfaction to the problem which you feel there is reason for complaint. You should fill out an inmate request slip, checking the box marked grievance and filling in the space provided with a short explanation of the problem. This complete form should be forwarded to the Housing Unit Officer.

(Doc. 70, Ex. B at 16-17.) The procedure requires the inmate's grievance to be heard by (1) the Housing Unit Officer; (2) the Housing Unit Counselor; (3) the Unit Commander; (4) the Deputy Warden; and (5) the Warden. (See Doc. 70, Ex. B at 16-17.) Heleva received the Inmate Handbook upon incarceration. (Doc. 70 ¶ 31; Doc. 100 ¶ 29.) Thus, Heleva knew or should have known the proper procedure for filing a grievance. The evidence of record reveals that Heleva only filed grievances regarding companion claims or cases. (See Doc. 70, Ex. C.) The grievances filed by Heleva concerned, *inter alia*, the opening of legal mail, television privileges, hot water complaints, and complaints regarding officer behavior. (See Doc. 70, Ex. C at

7

1-8, 22, 33.)  In his capacity as Deputy Warden, Jennings responded to Heleva's grievances on March 15, 2004.  (See Doc. 70, Ex. C at 10.)  Specifically, Jennings advised Heleva that his "grievances are based on issues relating to Policy & Procedure, [and] these issues are not grievable."  (Doc. 70, Ex. C at 10.)

Heleva has not submitted any evidence that he timely filed an administrative remedy request pertaining to his Eighth Amendment failure-to-protect claim in this case.  Defendants filed affidavits indicating that they received no complaints or grievances regarding this claim.  (Doc. 70.)  The affidavits of Jennings, McFarland, and Taeberry state that they were never personally aware that a threat or personal assault on Heleva was likely to occur.  (Doc. 70, Exs. E, F, G.)  Warden Keenhold's affidavit states that he "never received an appeal from Mr. Heleva regarding any of the incidents described in the complaint."  (Doc. 70, Ex. D, part 1 ¶ 11.)[7]  Warden Keenhold is the final step in the inmate grievance procedure.  Heleva's incident was never investigated and a decision was never reached within the prison regarding his claim.  (Doc. 70, Ex. D, part 1 ¶¶ 10, 12.)  Officer Kunkle's affidavit states that, to her knowledge, Heleva never filed a grievance against her or complained to officials at MCCF that she acted unlawfully or inappropriately.  (See Doc. 97, Ex. B ¶ 14.)  These affidavits are unopposed by any evidence presented by Heleva.  Accordingly,

---

[7] The court notes that defendants Keenhold, Jennings, Taeberry and McFarland were not present for the incident at issue.  (See Doc. 70.)  Accordingly, they have no first-hand knowledge of the incident.

the court finds that Heleva failed to go through all five levels of appeal as required by the MCCF grievance procedure with respect to his present claim.

Next, according to Spruill, the court must address the procedural default aspect to the exhaustion issue. As the Spruill Court stated, "a court reviewing a prisoner's § 1983 claim for compliance with § 1997e(a) will have, at best, a ruling from a prison grievance appellate body on whether the prisoner complied with the prison grievance system's procedural rules." Spruill, 372 F. 3d at 232. In the matter *sub judice*, Heleva did not submit an administrative remedy request with respect to the Eight Amendment failure-to-protect claim. Thus, Heleva has procedurally defaulted exhaustion concerning his failure-to-protect claim. A procedural default bars Heleva from bringing a claim in federal court. See id. at 227-32.

In light of the evidence regarding Heleva's failure to exhaust his Eighth Amendment failure-to-protect claim against defendants, the court finds that Heleva did not substantially comply with MCCF's administrative remedy process. Further, defendants submitted evidence that, while Heleva administratively pursued a complaint in a companion case, he did not comply with the administrative remedy scheme of the MCCF grievance procedure regarding his failure-to-protect claim. (See Doc. 70, Ex. C.) Even if a plaintiff is seeking both injunctive and monetary relief, as in the instant case (Doc. 1 at 7), he still must exhaust his administrative remedies, as the PLRA makes no distinction between claims for damages, injunctive relief, or both. Spruill, 372 F.3d at 227; see also Booth v. Churner, 206

F.3d 289 (3d Cir. 2000) aff'd, 532 U.S. 731 (2001); Nyhuis v. Reno, 204 F.3d 65 (3d Cir. 2000). Thus, "exhaustion is a prerequisite to suit." Id.[8]

In Porter v. Nussle, 534 U.S. 516, 532 (2002), the Supreme Court held that the exhaustion requirement under § 1997e(a) applies to all actions regarding prison conditions, including § 1983 actions or actions brought pursuant to any other federal law. The Porter Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Id. Heleva's action alleges an Eighth Amendment failure to-protect claim and thus, exhaustion is required in his case. It is undisputed that MCCF has a grievance system available to inmates. Heleva essentially thwarted the purpose of the exhaustion requirement by not allowing the prison to have a fair and

---

[8] The Supreme Court recently reiterated the exhaustion requirement in § 1983 cases. In Woodford v. Ngo, __ U.S.__, 126 S. Ct. 2378, 2382-83 (June 22, 2006), the Court stated:

> The PLRA strengthened the exhaustion provision in several ways. Exhaustion is no longer left to the discretion of the district court, but is mandatory. Prisoners must now exhaust all "available" remedies, not just those that meet federal standards. Indeed, as we held in Booth [v. Churner], a prisoner must now exhaust administrative remedies even where the relief sought—monetary damages—cannot be granted by the administrative process.

Woodford v. Ngo, __ U.S.__, 126 S. Ct. 2378, 2382-83 (June 22, 2006) (citations omitted).

full opportunity to address his present Eighth Amendment claim before he filed this action.  Id. at 2385.[9]

Accordingly, the court finds that Heleva has procedurally defaulted his Eighth Amendment failure-to-protect claim and review need not proceed to the merits of this claim.  Therefore, the court will grant the motion for summary judgment.

An appropriate order will issue.

  S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:      February 21, 2007

---

[9] As this Court stated in Fortune v. Bitner, No. 3:CV-01-0111, 2006 WL 2796158, at * 7 (M.D. Pa. Sept. 25, 2006), "[t]he PLRA mandates that inmates 'properly' exhaust Administrative remedies before filing suit in federal court." (Citing Ngo at 2387).  The PLRA exhaustion requirement was designed, in part, to "afford corrections officials an opportunity to address complaints internally before allowing the initiation of a federal suit."  Id. at *9.  As in the Fortune case, it is clear that Heleva did not take sufficient action to put the MCCF officials on notice and to give them an opportunity to address Heleva's complaint that Officer Kunkle failed to promptly protect him from harm at the hands of another inmate.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DANIEL A. HELEVA,** | : | CIVIL ACTION NO. 1:04-CV-1488 |
| Plaintiff | : | (Judge Conner) |
| v. | : | |
| **SANDRA KUNKLE, et al.,** | : | |
| Defendants | : | |

## **ORDER**

AND NOW, this 21st day of February, 2007, upon consideration of defendants' second motion for summary judgment (Doc. 95), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. Defendants' second motion for summary judgment (Doc. 95) is GRANTED.

2. The Clerk of Court is directed to enter JUDGMENT in favor of defendants and against plaintiff on all claims.

3. Any appeal from this order is DEEMED frivolous and not in good faith. See 28 U.S.C. § 1915(a)(3).

4. The Clerk of Court is directed to CLOSE this case.

   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge